UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

LELAND GLEN SHOOK and                                                                       Case No. 24-10724-t7
COREY LEVELLE SHOOK,

    Debtors.

## OPINION

    Before the Court is CNB Bank's ("CNB's") motion to reconsider the Court's July 24, 2024, order ruling that two orders entered in a state court action violated the automatic stay and were void. CNB argues that the Court's order ran afoul of the *Rooker-Feldman* doctrine and should be set aside. CNB also argues that it did not violate the automatic stay because the assets addressed in the state court orders were not property of the bankruptcy estate. Finally, CNB argues that the Court's order should not apply to one of the individual defendants in the state court action because she did not file for bankruptcy protection. Having considered the motion, the Court finds that it lacks merit and should be denied.

A.    Facts.[1]

    For the limited purpose of ruling on the motion to reconsider, the Court finds:

    Debtors are the sole owners and managing members of 50-50 Backhoe Services, LLC, a New Mexico limited liability company ("50-50"). Leland Shook is an owner and managing

---

[1] The Court takes judicial notice of its docket in this case and the State Court Action. *See St. Louis Baptist Temple v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir.1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings.") (citing *St. Louis*).

member of Colt, LLC ("Colt"). Baylee Presley is an employee of 50-50 but is not an owner or managing member.

In 2019, 50-50 borrowed money from CNB (the "Equipment Loans") and pledged as collateral certain rolling stock and other equipment (the "Equipment"). Some of the Equipment is owned by Colt, which signed a hypothecation agreement in 2022. Debtors guaranteed repayment of the Equipment Loans.

In addition to the Equipment Loans, in 2022, 50-50 signed a contract with CNB to sell CNB certain current and future accounts receivable (the "AR Sale"). The agreement was renewed in 2023. Under the contract, 50-50's customers were supposed to pay the subject accounts receivable directly to CNB. Debtors guaranteed 50-50's performance under the contract.

In May 2024, CNB discovered that it was not collecting the accounts receivable it had purchased from 50-50 under the AR Sale. CNB sued Debtors and Ms. Presley on June 21, 2024, in the Fifth Judicial District Court of the State of New Mexico, Eddy County, commencing a case styled *CNB Bank v. Corey L. Shook, Leland L. Shook, and Baylee Page, a.k.a. Baylee J. Presley,* D-503-CV-2024-00525 (the "State Court Action").

In its complaint, CNB alleged that Debtors and Presley, acting on behalf of 50-50, improperly diverted accounts receivable proceeds that should have been paid to CNB under the AR Sale. CNB asked for an accounting, for damages caused by Debtors' alleged fraud and conversion, for a temporary restraining order restricting the use of the diverted funds, and for a money judgment on the guarantees Debtors signed.

The complaint does not name 50-50 or Colt as defendants and no relief is sought on the defaulted Equipment Loans. The complaint does not allege that defendants are custodians of 50-50's money.

According to CNB's counsel, 50-50 was not named because CNB thought 50-50 was going to file bankruptcy. Whatever the reason, the State Court Action proceeded without an essential party.

On July 2, 2024, CNB filed an emergency motion for a hearing on its request for a temporary restraining order (the "TRO Motion"). The state court scheduled a hearing on the TRO Motion for July 18, 2024.

Debtors filed this case on July 17, 2024, at 3:43 p.m. Debtors' counsel sent an email to CNB's counsel on July 17, 2024, at 4:48 p.m., notifying her that Debtors filed this case and of his hope the parties could work together to resolve the matter. An earlier email from CNB's counsel implied that a bankruptcy filing would be sufficient to vacate the hearing.[2]

At 4:38 p.m. on July 17, 2024 (i.e., postpetition), CNB filed in the State Court Action a motion for immediate issuance of a writ of assistance (the "Writ of Assistance Motion"). The Writ of Assistance Motion addressed the Equipment Loans, despite that facts that the complaint

---

[2] The email, sent by CNB's counsel on July 17, 2024, at 5:07 a.m., states: "Thanks for visiting with me yesterday about the Shook matter. FYI, the hearing on Shook is Thursday in Carlsbad, and not Friday of this week. If you are going to get a BR petition filed before the hearing I would appreciate your letting me know and providing me with a copy of the filed Petition so that we can avoid having someone drive to Carlsbad for the hearing. Someone will be leaving the Roswell office about 10 tomorrow morning to attend that hearing. I would assume that you would also like to avoid making that trip. Thanks for your consideration." However, CNB's counsel argues that, even though counsel said it would not *drive* to the hearing and appear in person, counsel never said it would cancel the hearing nor decline to appear *by video*. That is what happened.

does not mention them and the owners of the Equipment are not defendants. Nevertheless, CNB asked the state court to issue a writ of assistance allowing CNB to repossess the Equipment.

Despite the fact that Debtors' counsel complied with the requests in CNB's email and CNB's counsel had actual notice of the bankruptcy filing, CNB's counsel attended the July 18, 2024, hearing in the State Court Action by video. The hearing was on the TRO Motion. The state court and CNB's counsel were well aware of the bankruptcy filing. Nevertheless, CNB's counsel urged the state court to proceed because none of the accounts receivable at issue were property of Debtors' bankruptcy estate. The state court did so and agreed to enter the requested temporary restraining order.

In a surprise move, the state court then took up the Writ of Assistance Motion, filed postpetition about 18 hours earlier. No hearing had been set on the Writ of Assistance Motion. It is not clear that the motion had been served on Debtors. Again, however, because of CNB's counsel's assurance that the Writ of Assistance Motion did not deal with property of Debtors' bankruptcy estate, the state court decided that the automatic stay did not prevent the court from hearing and granting the Writ of Assistance Motion.

On July 22, 2024, the state court entered a temporary restraining order ("TRO"), which contains the following findings and orders:

- The court held a hearing on the motion on July 18, 2024;
- Debtors were given notice of the hearing but did not appear;
- The relief requested relates to money owed to CNB;
- Debtors are the "custodians" of 50-50's money, and/or are the "custodians" of 50-50;
- All money paid to 50-50 since May 15, 2024, on account of any and all accounts receivable must be immediately remitted to CNB;
- Debtors shall render an accounting of the remitted funds by August 1, 2024; and
- Debtors are enjoined from using any of the money until further order of the court.

The TRO goes far beyond the relief requested in the complaint. In the complaint, CNB asked for "a complete restriction on the use of any and all funds that 50-50 has received from customers on invoices previously submitted and sold to CNB." The TRO, however, orders Debtors to pay CNB all funds received by 50-50 after May 15, 2024. Further, the TRO applies to *all* accounts receivable and proceeds, whether or not sold to CNB.[3] Finally, the TRO orders Debtors to provide an accounting to CNB within 12 days.

Also on July 22, 2024, the state court entered an order granting the Writ of Assistance Motion. The order includes the following:

> The Defendants, who are the Managing Members of 50-50 Backhoe Service LLC, shall assemble all of the Collateral identified in the attached *Writ of Assistance*, and inform CNB through its counsel as to the location and when the Collateral is ready for pick-up, **no later than seven (7) days** from the date of entry of this order.

On July 23, 2024, Debtors filed an emergency motion to enforce § 362,[4] asking that, inter alia, the July 22, 2024, state court orders be declared void. CNB objected. The Court heard oral arguments of the parties at an emergency hearing held on July 24, 2024. After the hearing, the Court entered an order (the "Order Enforcing Stay") ruling that the State Court Action is a judicial proceeding against Debtors; the July 18, 2024, hearing and the state court orders were continuations of the judicial proceeding; and the orders were entered in violation of the automatic stay and were void.

On July 24, 2024, Debtors removed the State Court Action to this Court.

On August 7, 2024, CNB filed a motion to reconsider the Court's ruling. CNB's primary argument is that the Order Enforcing Stay violated the *Rooker-Feldman* doctrine. CNB also

---

[3] 50-50 apparently granted CNB a security interest in its accounts receivable as additional collateral for the Equipment Loans.
[4] All statutory references are to 11 U.S.C.

argued in its reply that it did not violate the automatic stay because the assets at issue were not estate property, and that the Order Enforcing Stay should not apply to Ms. Presley because she is not a bankruptcy debtor.

B.     <u>Motions to Reconsider – Standard of Review</u>.

A court order or judgment is interlocutory unless it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. U.S.*, 324 U.S. 229, 233 (1945) (citing *St. Louis, I.M. & S. Ry. Co. v. Southern Express Co.,* 108 U.S. 24, 28-29 (1883)). The Order Enforcing Stay found the state court orders void but reserved determination of the remaining relief requested, including the important issue of sanctions. As the order did not end the litigation on the merits of the contested matter, it is interlocutory. *See, e.g., In re Shari Siebel,* 2018 WL 2283835, *1 ("an order adjudicating fewer than all claims of all parties may be revised at any time before the entry of a judgment.").

Trial courts have discretion to revise interlocutory orders and are not bound by the strictures of Federal Rules of Civil Procedure 59(e) or 60(b). *See Trujillo v. Board of Educ. of Albuquerque Public Schools,* 212 Fed. Appx. 760, at **3-**4 (10th Cir.2007) (Court not bound by stricter standards for considering a Rule 59(e) or Rule 60(b) motion.). As the Court has observed elsewhere:

> Notwithstanding the trial court's broad discretion to alter its interlocutory orders, the motion to reconsider "is not at the disposal of parties who want to rehash old arguments." *Young v. Murphy,* 161 F.R.D. 61, 62 (N.D.Ill.1995) (quoting *In re Oil Spill by "Amoco Cadiz",* 794 F.Supp. 261, 267 (N.D.Ill.1992)). Rather, as a practical matter, "[t]o succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *See California v. Summer Del Caribe, Inc.,* 821 F.Supp. 574, 578 (N.D.Cal.1993) (internal quotation omitted). …
> … [T]he Court will follow the *Trujillo/Raytheon/Fye* line of authority and review the Motion to Reconsider under the Court's "general discretionary authority." The Court will not consider itself bound by the Rule 59(e) or Rule 60(b) standards. No particular test or set of factors will be employed. In general, however, the Court:

> —Will be fairly strict on motions to reconsider that simply "rehash" prior arguments made and ruled against; and —Will be less strict on motions to reconsider based on either (i) law applicable to the ruling that was not cited by the Court or the parties, and that could change the outcome; or (ii) evidence not previously submitted to the Court, if the movant has reasonably excused its failure to submit the evidence in the first instance, and if the evidence could change the result.

*Estate of Jacoby v. Akbari-Shahmirzadi (In re Akbari-Shahmirzadi),* 2013 WL 1099794, *6 (Bankr. D.N.M.).

C. *Rooker-Feldman* Does not Apply.

CNB's main argument is that the Court lacked jurisdiction and authority to set aside the state court orders under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine bars federal courts, other than the Supreme Court, from reviewing state court orders or judgments. *See Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923) and *D.C. Ct. App. v. Feldman,* 460 U.S. 462 (1983). The doctrine applies to bankruptcy courts. *See, e.g., In re Wilson,* 116 F.3d 87, 90 (9th Cir. 2000) ("The bankruptcy court is also prohibited from reviewing the state court's judgment by the *Rooker-Feldman* doctrine, which prohibits lower federal courts from sitting as effective courts of appeal for state court judgments."). In general terms, the doctrine holds that federal courts may not sit as courts of appeal for state court orders and judgments the losing party is unhappy with.

While the Court respects and follows the *Rooker-Feldman* doctrine, it does not apply here. It is universally acknowledged that *Rooker-Feldman* does not prevent a bankruptcy court from determining whether the automatic stay applies to pending state court litigation. In *In re Gruntz,* 202 F.3d 1074, 1082 (9th Cir. 2000), for example, the Ninth Circuit opined:

> [B]y virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay. "The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land." *Kalb,* 308 U.S. at

439, 60 S. Ct. 343. Thus, the *Rooker–Feldman* doctrine is not implicated by collateral challenges to the automatic stay in bankruptcy. A bankruptcy court simply does not conduct an improper appellate review of a state court when it enforces an automatic stay that issues from its own federal statutory authority. In fact, a reverse Rooker–Feldman situation is presented when state courts decide to proceed in derogation of the stay, because it is the state court which is attempting impermissibly to modify the federal court's injunction.

*Gruntz*, at 1083.

Thus, while state courts may determine their jurisdiction by deciding whether the automatic stay applies to an action before them, *see, e.g., In re Oakwood Acceptance Corp.,* 308 B.R. 81, 85 (Bankr. D. N.M. 2004) ("state courts have the authority to determine whether the stay in bankruptcy applies to proceedings before them"), if the state court errs in finding that the automatic stay does not apply, the bankruptcy court is not bound by the error. A recent opinion summarizes this point:

> The bankruptcy court and state court have concurrent jurisdiction to determine whether the automatic stay applies, but the bankruptcy court has the final word. If a state court erroneously determines that the automatic stay does not apply in a case, it is in effect an improper modification of the automatic stay and renders the action in the nonbankruptcy proceeding void ab initio. The bankruptcy court has exclusive jurisdiction to grant stay relief and to enforce the automatic stay.

*In re Hall*, 2024 WL 1023129, *4 (Bankr. D. Kan.) (footnotes omitted). For other authority to the same effect, *see BioConvergence LLC v. Attariwala*, 2020 WL 1915269, at *3 (S.D. Ind.) ("If the non-bankruptcy court issues a finding as to the application of the stay that the bankruptcy court deems erroneous, the bankruptcy court's resolution of this issue is determinative"); *In re Benalcazar,* 283 B.R. 514, 528 (Bankr. N.D. Ill. 2002) ("[W]hile a state court has jurisdiction to determine the applicability of the automatic stay in the first instance, its jurisdictional determination is subject to collateral attack."); *In re Franco,* 574 B.R. 730, 737 (Bankr. D.N.M. 2017) ("[*Rooker-Feldman*] does not apply, because the judgment, obtained in violation of the automatic stay, is void and has no effect"); *In re S-TEK I, LLC,* 625 B.R. 519, 525 (Bankr.

D.N.M. 2020 ("Nor does Rooker-Feldman require enforcement of state court judgments or orders where enforcement of the judgement or order is subject to the automatic stay imposed by Bankruptcy Code § 362(a)(2) upon commencement of a bankruptcy case."); *Wagner v. Union State Bank (In re Wagner),* 2019 WL 1995606, at *5 (Bankr. D. Kan.) ("Orders entered in violation of the stay are void, not binding on the bankruptcy court, and cannot be saved by collateral estoppel, res judicata, or the Rooker-Feldman doctrine"); *see generally In re Ebel,* 139 Fed. Appx. 26, 29 (10th Cir. 2005) ("the bankruptcy courts retain jurisdiction to review compliance with the automatic stay.").

> The basis for this rule is the Supremacy Clause of the United States Constitution:[5]
>
> If the non-bankruptcy court's initial jurisdictional determination is erroneous, the parties run the risk that the entire action later will be declared void ab initio. *See Schwartz v. United States,* 954 F.2d 569, 570–71 (9th Cir.1992); *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 940 (6th Cir.1986). If a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy forum, the bankruptcy forum's resolution has been held determinative, presumably pursuant to the Supremacy Clause.

*Chao v. Hosp. Staffing Servs., Inc.,* 270 F.3d 374, 384 (6th Cir. 2001).

Thus, CNB's main argument lacks merit: *Rooker-Feldman* places no bar to a bankruptcy court's authority to determine the extent of, and enforce, the automatic stay. CNB's *Rooker-Feldman* argument is overruled.

---

[5] "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S.C. Const. Art. VI cl. 2.

D.  CNB's "Property of the Estate" Argument Lacks Merit.

CNB argues that it did not violate the automatic stay because the state court orders deal only with 50-50's or Colt's property, not property of the estate. This argument is without merit because the Court did not rule that CNB violated § 362(a)(3) ("any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"). Instead, the Court ruled that CNB violated § 362(a)(1) ("the . . . continuation . . . of a judicial . . . proceeding against the debtor that was . . . commenced before the commencement of the case under this title").

CNB also argues that filing the Writ of Assistance Motion, attending the July 18, 2024, hearing, and requesting entry of the state court orders did not violate § 362(a)(1). The Court rejects this weak argument. Debtors are not nominal defendants; they and Ms. Presley are the *only* defendants. Postpetition, CNB obtained a restraining order against Debtors; an order forcing Debtors to pay 50-50's money to CNB; an order forcing Debtors to assemble 53 pieces of heavy equipment; and an order requiring Debtors to render an accounting to CNB. CNB clearly continued the State Court Action against Debtors postpetition.

E.  The State Court Orders Do Not Apply to Ms. Presley.

The TRO applies to "Defendants, as the custodians of the monies that have been paid to 50-50," and to "Defendants, as custodians." The order granting the Writ of Assistance Motion applies to "Defendants, who are the Managing Members of 50-50 Backhoe Service LLC." Ms.

Presley is not a managing member of 50-50, nor is she a custodian of 50-50s funds.[6] She is just an employee. Thus, the state court orders do not apply to her. It would have been better to have named 50-50 as a defendant and left Ms. Presley out of the lawsuit.

Conclusion

The State Court Action got off on the wrong foot by omitting 50-50 as a defendant. This problem has not been fixed. Further confusion was sown by the TRO Motion and the Writ of Assistance Motion, both of which asked for relief against Debtors that was not sought in the complaint. Finally, the state court orders muddied the waters still more by granting relief against Debtors that had not been sought in the complaint *or* the motions. That the Writ of Assistance Motion was filed postpetition and decided on the merits about 18 hours later did not help. The State Court Action has become a procedural and due process mess.

Had CNB named 50-50 as a defendant and included a count to collect the Equipment Loans, CNB could easily have navigated Debtors' bankruptcy filing without violating the automatic stay. Instead, CNB tried to thread a needle that could not be threaded.

*Rooker-Feldman* does not apply to a bankruptcy court's determination that actions taken in state court violate the automatic stay. If the state court's ruling conflicts with the bankruptcy court's, the state court's ruling must give way. Here, the § 362(a)(1) stay violations were obvious and should have been pointed out by CNB's counsel to the state court judge.

---

[6] Black's Law Dictionary (12th ed. 2024), defines "custodian" as "[a] person … that has charge or custody (of … valuables) or, alternatively, gives the definition from § 101(11) "[a] prepetition agent who has taken charge of any asset belonging to the debtor." New Mexico caselaw indicates that the phrase "custodian of the fund" applies to public officials or persons that are court appointed. *E.g., Mundil v. Huston*, 33 N.M. 388 (S. Ct. 1928); *New Mexico Educ. Ret. Bd. v. Romero*, 541 P.3d 175, (N.M. App. 2023).

CNB's other arguments in support of its motion to reconsider are also overruled. A separate order denying the motion will be entered.

Hon. David T. Thuma
United States Bankruptcy Court

Entered: September 20, 2024
Copies to: counsel of record